UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE TILE, MARBLE, AND
TERRAZZO INDUSTRY INSURANCE FUND, et al.,

       Plaintiffs,                       Civil Action No. 19-CV-11093

vs.                                    HON. BERNARD A. FRIEDMAN

HARD ROCK STONE WORKS, INC., et al.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' DECLARATIONS

        This matter is presently before the Court on the parties' cross-motions for summary judgment [docket entries 26 and 27] and plaintiffs' motion to strike defendants' declarations [docket entry 30]. All three motions are fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

        Plaintiffs allege that defendants have failed to make fringe benefit contributions in accordance with the parties' collective bargaining agreement ("CBA"). Plaintiffs include "jointly trusteed funds in the tile, terrazzo and marble industry [("the Funds")] that were established pursuant to Section 101 of the Labor Management Relations Act ('LMRA'), 29 U.S.C. § 186, and Sections 302 and 515 of the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. §§ 1132 and 1145." Compl. ¶ 1. The Funds are affiliated with the Bricklayers and Allied Craftworkers Local Union No. 2 (the "Union"), which is based in Warren, Michigan, and is also plaintiff in this suit. *See id*. ¶ 2. Defendants are Hard Rock Investments ("HRI"), Hard Rock Stone Works ("HRSW"), and Hard Rock Properties ("HRP"), as well as HRSW's chief operating officer, Steve

Amodeo, and chief executive officer, Randy Frantz.  *See id*. at ¶¶ 3-7.  Defendants Amodeo and

Frantz founded and co-own all three defendant corporations.  *See* Defs.' Ex. 1 (Amodeo Decl.).  HRI

and HRSW are both in the kitchen-and-bath countertop fabrication and installation business, and

HRP is a property holding company.  *See* Defs.' Summ. J. Br. at 2-3, 6.

   Plaintiffs allege that on March 8, 2013, HRI signed a CBA with the Union and

thereby committed to "make timely employee fringe benefit contributions to the Funds for each

employee covered by the CBA . . . and to be bound by the terms and conditions set forth in the

Funds' Trust Agreements."  Compl. ¶¶ 12-13.  The Funds are third-party beneficiaries to the CBA.

*See id*. ¶ 13.  Plaintiffs further allege that HRI, HRSW, and HRP are alter-ego corporations, and that

defendants Amodeo and Frantz are "carrying on a classic double-breasting operation,[1] with intent

to evade [HRI's] fringe benefit obligations under the CBA and to take advantage of the Union to the

detriment of the Funds."  *Id*. ¶ 22.  Plaintiffs state that Amodeo and Frantz are using the three alter

ego corporations to minimize the "amount of covered work required through their Union arm," HRI,

while not triggering "a partial withdrawal from the Bricklayers Pension Funds, which would in turn

cause [HRI] to be assessed with withdrawal liability."  *Id*. ¶ 23.

   Plaintiffs' complaint contains six claims:  Violation of ERISA (29 U.S.C. § 1145),

the CBA, and the Funds' Trust Agreements against HRI (Count I); violation of ERISA (§ 1145) via

alter-ego liability against HRSW and HRP (Count II); violation of ERISA (§ 1145) via piercing the

---

  [1] The Sixth Circuit has described "double breasting" as an operation where "two or more
coexisting employers performing the same work are in fact one business, separated only in
form."  *Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Cont., LLC*, 581 F.3d 313,
318 (6th Cir. 2009).  There are two common types of double-breasting operations:  "(1) the
'classic' double-breasting operation in which a union contractor creates a second, nonunion
company, and (2) the 'reverse' double-breasting situation in which a non-union company opens a
sister company that becomes a union signatory."  *Id*.

corporate veil against Amodeo and Frantz (Count III); violation of the Michigan Building Contract

Fund Act ("MBCFA") against Amodeo and Frantz (Count IV); breach of fiduciary duties under

ERISA against Amodeo and Frantz (Count V); and state and common law conversion against

Amodeo and Frantz (Count VI).

## I. Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment.  In deciding these

motions, the Court

> must view the evidence in the light most favorable to the party
> opposing the motion for summary judgment.  *Kirilenko-Ison v. Bd.
> of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020).
> "This includes drawing 'all justifiable inferences' in the nonmoving
> party's favor."  George, 966 F.3d at 458 (quoting *Anderson v. Liberty
> Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202
> (1986)).  "[T]he judge's function is not himself to weigh the evidence
> and determine the truth of the matter but to determine whether there
> is a genuine issue for trial."  *Jackson-VHS*, 814 F.3d at 775 (quoting
> *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

## A. Violation of ERISA (§ 1145), the CBA, and the Funds' Trust Agreements against HRI (Count I)

The Employee Retirement Income Security Act of 1974 states that

> [e]very employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms of
> a collectively bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in accordance with
> the terms and conditions of such plan or such agreement.

Section 1145.

Plaintiffs contend that pursuant to the CBA, HRI qualifies as an "employer who is

obligated to make contributions to a multiemployer plan," as defined by ERISA.  This obligation

includes the requirement to make fringe benefit contributions to the Funds for each employee performing any work covered by the CBA. *See* Pls.' Summ. J. Br. at 2, 6-7. Defendants agree that HRI is bound by the CBA and ERISA, but argue that plaintiffs have presented no evidence indicating that HRI has failed to meet its obligations. Defendants note that plaintiffs' draft audit report "asserts that HRI failed to pay less than *$1,700* in contributions over a six-year period," which, defendants argue, "is a rounding error in the context of Plaintiffs' entire case, in which they are seeking approximately $11 million."[2] Defs.' Summ. J. Resp. Br. at 7 (emphasis in original).[3] In response, plaintiffs contend that because HRSW, as HRI's alleged alter-ego, has failed to make fringe benefit contributions to the Funds, HRI has in effect also failed to meet its fringe benefit obligations under the CBA. *See* Pls.' Summ. J. Resp. Br. at 1-2.

Although the parties generally agree that HRI has fulfilled its fringe benefit obligations, the same cannot be said for HRSW, which, as defendants acknowledge, has not made any such contributions under the CBA. Because, as discussed in further detail below, the Court

---

[2] Based on their audit report, plaintiffs allege that defendants owe the following amounts:

- $1,640.12 fringe benefit contributions[, consisting of] $2,384.87 total owed with liquidated damages and interest [HRI only]
- $4,127,542.42 fringe benefit contributions[, consisting of] $5,521,120.55 total owed with liquidated damages and interest [HRI and HRSW – after CBA executed]
- $3,120,682.54 fringe benefit contributions[, consisting of] $4,141,149.38 total owed with liquidated damages and interest [HRI and HRSW – after employees' membership in the union]

Pls.' Summ. J. Resp. Br. at 1 (citing Pls.' Ex. 1 (Audit)).

[3] Defendants raise substantially similar arguments in their motion for summary judgment. *See* Defs.' Summ. J. Br. at 8-9.

concludes that HRSW and HRI are, for all relevant purposes, "one and the same, constituting a single employer," *Indus Cont.*, 581 F.3d at 314, HRI is liable for HRSW's unpaid fringe benefit contributions.  The Court shall therefore grant plaintiffs' motion for summary judgment and deny defendants' motion for summary judgment as to Count I.

**B.  Violation of ERISA (§ 1145) via alter-ego liability against HRSW and HRP (Count II)**

The Sixth Circuit has explained that

"[t]he alter ego doctrine is an equitable doctrine developed to prevent employers from evading obligations under the [National Labor Relations] Act merely by changing or altering their corporate form. The doctrine operates to bind an employer to a collective bargaining agreement if it is found to be an alter ego of a signatory employer. We have addressed alter-ego operations that occur in two factual contexts. The first is when the new entity begins operations but is merely a disguised continuance of the old employer.  The second is what is referred to as a "double-breasted operation," where two or more coexisting employers performing the same work are in fact one business, separated only in form.

The Sixth Circuit test for determining whether two companies are alter egos has been adopted from the case law of the National Labor Relations Board. We look to see whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership. In applying these factors, no individual factor is outcome determinative; instead, all the relevant factors must be considered together.  Under Sixth Circuit precedents, moreover, an employer's intent to evade the obligations of a collective bargaining contract is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status.  We came to this conclusion based on our reasoning that an employer who desired to avoid union obligations might be tempted to circumvent the doctrine by altering the corporation's structure based on some legitimate business reason, retaining essentially the same business, and utilizing the change to escape the unwanted obligations.

In double-breasting cases, we have confronted two common fact patterns:  (1) the "classic" double-breasting operation in which a

> union contractor creates a second, nonunion company, and (2) the
> "reverse" double-breasting situation in which a non-union company
> opens a sister company that becomes a union signatory.

*Indus. Cont.*, 581 F.3d at 317-18 (internal quotation marks and citations omitted).  The Sixth Circuit

has also stated that the application of the alter-ego doctrine should be limited to circumstances in

which a plaintiff has been made "somehow worse off" by "not receiv[ing] the full benefit of its

collective bargaining agreement."  *Trs. of the Resilient Floor Decorations Ins. Fund v. A & M*

*Installations, Inc.*, 395 F.3d 244, 248 (6th Cir. 2005).

As an initial consideration, the Court notes that plaintiffs' motion for summary

judgment does not address their claim against HRP.  In defendants' motion, they describe HRP as

a property holding company with no employees or clients, and which "performs no work

whatsoever," arguing that "under any conceivable standard, there is no basis to conclude that HRP

is the alter ego of any other entity."  Defs.' Summ. J. Br. at 10.  In response, plaintiffs concede that

"HRP is not a recognized alter-ego" of HRI.  Pls.' Summ. J. Resp. Br. at 2.  The Court shall

therefore grant defendants' motion for summary judgment on Count II as to HRP.

As to HRSW, plaintiffs argue that this defendant qualifies as HRI's alter-ego and is

therefore bound by the terms of the CBA.  Plaintiffs state that HRI and HRSW (1) share identical

management structures and personnel; (2) perform the same type of work (i.e., providing stone

countertops); (3) are located at the same address and share the same administrative staff, supervisors,

and employees[4]; (4) share equipment, all of which is owned by HRSW; (5) share an overlapping

---

[4] Plaintiffs state that "employees floated back and forth between HRI and HRSW (as needed) and were paid by both companies.  In fact, there were some instances where the employees worked for, and were paid by, both HRI and HRSW during the same weeks and on the same dates of employments."  Pls.' Summ. J. Br. at 11 (citations omitted).

customer base; and (6) share identical ownership – Amodeo and Frantz each owns 50% of both

entities.  *See id.* at 8-14.  Plaintiffs add that defendants' alleged double-breasting operation "was

established to the detriment of Plaintiff Funds . . . [as] employees only received union benefit

contributions . . . when they worked 'union' jobs [for HRI] and received a lesser wage and benefit

package when they worked 'non-union' jobs [for HRSW]."  *Id*. at 15.

   In response, defendants contend that "*the Union itself* proposed that Amodeo and

Frantz use HRI to execute the CBA so Defendant [HRSW] could *remain nonunion*."  Defs.' Summ.

J. Resp. Br. at 1 (emphasis in original).  Defendants state that HRSW was founded in 2005, and,

around the 2008 financial crisis,

> [it] began to have opportunities to perform work at job sites that
> required union labor.  To determine how it could access such
> opportunities, Amodeo began discussions with Peter Accica, who
> was then serving as the Union's business agent. . . .
>
> From the beginning, Amodeo made clear to Accica that HRSW did
> not intend to become exclusively a union company.  Among other
> things, using union labor would make HRSW extremely
> uncompetitive in its primary, residential market.  Accica assured
> Amodeo that HRSW's desire to remain nonunion was no obstacle. .
> . . The parties discussed using HRI for this purpose, and, according
> to Accica, so long as HRI was a separate company, HRI could sign
> the CBA with the Union while HRSW remained nonunion.
>
>      * * *
>
> Based on Accica's advice, HRI executed a [CBA] with the Union.

*Id*. at 2-4 (citations omitted).  Defendants state that around 2017, they learned for the first time that

"the Union intended to take the position that all of HRSW's work was subjected to the CBA."  *Id*.

at 4.  Defendants argue that because "the Union itself proposed the parties' arrangement," plaintiffs

have "received the full benefit of [their] bargain with HRI."  *Id*. at 9.  Therefore, defendants contend,

there is no inequity for the Court to remedy through the imposition of liability.  *See id.*[5]

Defendants' arguments regarding former Union agent Accica are unavailing. Defendants do not contend that the terms of the CBA reflect the alleged understanding between Accica and Amodeo, nor do they provide any documentation indicating that such an arrangement ever existed.  Moreover, as another judge of this Court has stated,

> the disputed fact concerning the alleged []representations is not material, because as a matter of law, an employer may not rely on the statements of a bargaining adversary concerning the scope of its contractual obligations. . . .  [S]ince the union and the trusts are separate entities[,] the employer could not reasonably rely on the statements of [the union's] agent concerning the employer's obligation to make fringe benefit contributions to the trust.

*Trs. for Mich. BAC Health Care Fund v. C.S.S. Cont., Co., Inc.*, No. 07-12331, 2008 WL 1820879, at *9 (E.D. Mich. Apr. 22, 2008) (internal quotation marks and citation omitted).  In the present case, defendants similarly cannot rely on the statements of Accica, a bargaining adversary.  Further, defendants do not claim that Accica ever purported to represent the plaintiff Funds.

Defendants also argue that the Court should not apply the so-called "relaxed labor-law alter-ego test" under the National Labor Relations Act, as this is an ERISA case.  Defs.' Summ. J. Br. at 10 (citing various cases from the Eighth Circuit).  In particular, defendants argue that intent (or lack thereof) to evade obligations under ERISA should be dispositive in this case, as defendants had no such intention.  *See id.* at 11.  However, the Sixth Circuit has stated that the "test for determining whether two companies are alter egos . . . look[s] to see whether the two [companies] have substantially identical management, business[ ] purpose, operation, equipment,

---

[5] Defendants raise substantially similar arguments in their motion for summary judgment. *See* Defs.' Summ. J. Br. at 3-4.

8

customers, supervision, and ownership." *Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Cont.*, 919 F.3d 368, 376 (6th Cir. 2019) (internal quotation marks omitted).  Although "[a]n employer's intent to evade its labor obligations is also a factor," it is not a dispositive one. *Id.* The Sixth Circuit has further explained that while "the purpose of the alter-ego doctrine is to prevent intentional evasions of labor obligations, . . . the test for determining whether it should be applied considers evidence of such intent as one of eight factors that all must be considered together." *Id.* at 379 n.5.  Intent "is neither a prerequisite factor, nor is it more important than the other factors." *Id*.

In this case, plaintiffs have conclusively established seven of the eight relevant factors.  While defendants do not concede "that HRI has an independent existence from HRSW in form only," Defs.' Summ. J. Br. at 11 n.2, they have failed to raise any facts to the contrary.  As to the eighth factor, defendants' intent to evade obligations under the CBA, defendants admittedly created the two parallel companies in an attempt to capitalize on Union projects without fully embracing Union obligations.  *See* Defs.' Summ. J. Resp. Br. at 3 (stating that "HRSW did not intend to become exclusively a union company.  Among other things, using union labor would make HRSW extremely uncompetitive"); Defs.' Summ. J. Br. 3-4.  Although defendants contend that they did so at the guidance of a former Union business agent, these arguments are, again, unavailing.  Under the terms of the CBA, plaintiffs have not received the full benefit of the bargain, as Union employees are performing identical work for HRI and HRSW while only receiving fringe benefit contributions for the fraction of their work that is nominally performed for HRI.  The Court shall therefore grant plaintiffs' motion for summary judgment on Count II as to defendant HRSW and deny defendants' motion for summary judgment as to this claim.

**C. Violation of ERISA (§ 1145) via piercing the corporate veil against Amodeo and Frantz (Count III)**

"A corporation is presumed to be a separate entity from its shareholders." *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 384 (6th Cir. 1991). However, in the context of an ERISA claim,

> the corporate veil may be pierced if the court finds substantial reasons for doing so after considering three general factors: (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent of the incorporators. In analyzing these three general factors, courts frequently consider more specific factors such as undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham.

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. Loc. 600 v. Aguirre*, 410 F.3d 297, 302-03 (6th Cir. 2005) (internal quotation marks and citation omitted). "The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007).

Defendants argue that none of the factors relevant to piercing the corporate veil are present in this case. *See* Defs.' Summ. J. Br. at 19. Defendants contend that (1) "the record is devoid of evidence that Amodeo and Frantz failed to treat any of the Hard Rock entities as separate entities from themselves"; (2) "[e]ven if Plaintiffs had not received all the payments to which they were entitled . . . that alone is not the type of injustice that warrants veil piercing"; and (3) "the record does not contain any evidence that Amodeo or Frantz intended to defraud anyone by establishing HRSW and HRI, much less Plaintiffs." *Id*. at 19-20.

In response, plaintiffs argue that "[c]ontrary to Defendant[s'] purported arguments

10

that there is no basis to pierce the corporate veil, a number of key elements exist." Pls.' Summ. J. Resp. Br. at 16. However, plaintiffs do not enumerate or explain these "key elements" in their response brief, nor do they include any discussion of Count III in their own motion for summary judgment. At most, plaintiffs appear to argue that HRI's undercapitalization and/or the fact that HRSW made certain payments for HRI warrant veil piercing in this case. *See* Pls.' Summ. J. Br. at 17.

Based on the facts presented and arguments raised by the parties, the Court concludes that plaintiffs have failed to demonstrate grounds for piercing the corporate veil. The Court shall therefore grant defendants' motion for summary judgment as to Count III.

### D. Violation of the Michigan Building Contract Fund Act ("MBCFA") against Amodeo and Frantz (Count IV)

In relevant part, the MBCFA[6] states that

[i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or

---

[6] Some courts and litigants refer to the statute as the MBCFA, while others refer to it as the MBTFA (Michigan Builders Trust Fund Act). Both refer to MICH. COMP. LAWS § 570.151 *et seq*.

> material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded . . . .
>
> The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

MICH. COMP. LAWS §§ 570.151, 570.152, 570.153.  Although the MBCFA is a penal statute, the Michigan Supreme Court "recognizes a civil cause of action for its violations." *Livonia Bldg. Materials Co. v. Harrison Const. Co.*, 742 N.W.2d 140, 143 (Mich. Ct. App. July 25, 2007) (citing *BF Farnell Co. v. Monahan*, 141 N.W.2d 58, 60 (Mich. 1966)).

> To establish a claim under the MBCFA, a plaintiff must show
>
> (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project.

*Id.* at 144.  "[F]or individual liability to attach to an officer [under the MBCFA], that officer must have personally misappropriated the funds after receipt by the corporation" – i.e., a plaintiff must show that the officer "personally misappropriated or personally participated in the diversion of the funds." *Elmer's Crane & Dozer, Inc. v. AMW Corp.*, No 266666, 2006 WL 1716775, at *3 (Mich. Ct. App. June 22, 2006).

Plaintiffs state that the MBCFA establishes a fiduciary relationship between HRI-HRSW (as contractors) and Union employees (as laborers). *See* Pls.' Summ. J. Br. at 18.  Further, plaintiffs argue that "fringe benefit contributions are considered a component of wages" and that

"[t]he corporate Defendants' diversion of fringe benefit contributions to pay other debts incurred[7] is clearly a violation of the [MBCFA] and thus, both Amodeo and Frantz are liable to the Funds for the unpaid contributions." *Id.*

In response, defendants argue that "[e]verything owed [to plaintiffs] has been paid." Defs.' Summ. J. Br. at 24. Further, defendants contend that plaintiffs cannot raise a claim under the MBCFA because they do not fall within the statutorily provided category of potential plaintiffs (i.e., the Funds and Union do not qualify as "laborers, subcontractors, or materialmen"), and the MBCFA claim is preempted by ERISA. *See* Defs.' Summ. J. Resp. Br. at 16-23.

The United States Supreme Court "has declined to find pre-emption when the state law at issue has only 'tenuous, remote, or peripheral connection with the covered plans [under ERISA], as is the case with many laws of general applicability.'" *Trs. for Mich. Laborers' Health Care Fund v. Seaboard Sur. Co.*, 137 F.3d 427, 429 (6th Cir. 1998) (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995)). On this basis, various judges in this district have held that ERISA does not preempt the MBCFA. *See, e.g.*, *Trs. of Detroit Carpenters' Health & Welfare Fund. v. D.P. Letscher Co., Inc.*, No. 98-75051, 2000 WL

---

[7] In their motion for summary judgment, plaintiffs address Count V prior to Count IV. *See* Pls.' Summ. J. Br. 16-18. Plaintiffs provide the following factual basis in support of Count V, which equally applies to Count IV:

> [T]he ledgers show that HRSW routinely made supplier and material payments for HRI; HRSW made payments for materials associated with both HRI and HRSW; and HRSW funded the operations of HRI - - all the while, fringe benefits owed for the employees performing covered work pursuant to the CBA were not being paid - - at the discretion and direction of Amodeo and Frantz.

*Id.* at 17.

13

1137709, at *6 (E.D. Mich. July 25, 2000); *Trs. of Plumbers & Pipefitters Loc. No. 333 Health &*

*Welfare Fund v. Grindall & White, Inc.*, No. 12-10977, 2013 WL 5450273, at *6 (E.D. Mich. Sept.

20, 2013). In *D.P. Letscher Co*., 2000 WL 1137709, at *6, the court stated that

> the purpose of the MB[C]FA 'is to protect the owner and those whose labor and materials make the performance of a construction contract possible and give rise to the owner's obligation to pay.' . . . [T]he MB[CF]A seems to be a statute of general applicability, and it neither 'relates to' nor has a 'connection with' an ERISA plan. Therefore, assuming that ERISA applies to Plaintiffs' claims, it does not preempt the MB[CF]A.

The Court agrees with this reasoning and concludes on the same grounds that plaintiffs' claim under

the MBCFA is not preempted by ERISA.

Further, "the Michigan courts have held that 'a reasonable inference of appropriation

arises from the payment of construction funds to a contractor and the subsequent failure of the

contractor to pay laborers, subcontractors, materialmen, or others entitled to payment.'" *Grindall*

*& White, Inc.*, 2013 WL 5450273, at *7 (quoting *Livonia Bldg. Materials Co.*, 742 N.W.2d at 144).

Even if the Court accepted defendants' argument that the Union and Funds do not themselves

qualify as "laborers, subcontractors, or materialmen," under the terms of the CBA, plaintiffs do

qualify as "others entitled to payment." The evidence produced by plaintiffs in this case supports

a reasonable inference that (1) the defendant is a contractor or subcontractor engaged in the building

construction industry, (2) the defendant was paid for labor or materials provided on a construction

project, (3) the defendant retained or used those funds, or any part of those funds, (4) the funds were

retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5)

the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or

furnish material for the specific construction project. Defendants have pointed to nothing in the

14

record that might rebut these inferences.  Consequently, the Court concludes that there is no genuine

issue of material fact and plaintiffs are entitled to judgment as a matter of law.  The Court shall grant

plaintiffs' motion for summary judgment and deny defendants' motion for summary judgment as

to Count IV.

### E. Breach of fiduciary duties under ERISA against Amodeo and Frantz (Count V)

Under ERISA, a fiduciary is defined as a person with "any discretionary authority

or control respecting management or disposition of plan assets."  Section 1002(21)(A).[8]  The Act

further states that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the

responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be

personally liable to make good to such plan any losses to the plan resulting from each such breach."

Section 1109(a).

Plaintiffs contend that defendants Amodeo and Frantz "are the owners and officers

of both HRI and HRSW and, more importantly, are the individuals that exercise discretionary

authority and control management and disposition of plan assets." *Id*. at 16.  In particular, plaintiffs

note that

---

[8] Section 1002(21)(A) states:

> Except as otherwise provided in subparagraph (B), a person is a
> fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control
> respecting management or disposition of its assets, (ii) he renders
> investment advice for a fee or other compensation, direct or indirect,
> with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary
> authority or discretionary responsibility in the administration of such
> plan. Such term includes any person designated under section
> 1105(c)(1)(B) of this title.

15

> [a] review of the general ledgers associated with both companies displays the funneling and filtering of payments between HRI and HRSW, as well as payments being made to other entities - - not the Funds, as required by the CBA.
>
> . . . [T]he ledgers show that HRSW routinely made supplier and material payments for HRI; HRSW made payments for materials associated with both HRI and HRSW; and HRSW funded the operations of HRI - - all the while, fringe benefits owed for the employees performing covered work pursuant to the CBA were not being paid - - at the discretion and direction of Amodeo and Frantz.

*Id*. at 17.  Plaintiffs argue that defendants Amodeo and Frantz qualify as fiduciaries for the plaintiff Funds and are thus personally liable for failing to act in the interest of Fund beneficiaries as required by § 1104(a)(1).

Defendants counter by arguing that (1) plaintiffs failed to place "Amodeo and Frantz on notice of their purported fiduciary status and risk of personal liability for unpaid employer contributions"; (2) "HRSW's alleged unpaid fringe-benefit contributions were [not] plan assets for the purposes of 29 U.S.C. § 1002(21)(A)," as they had yet to be paid over to the plan; and (3) "[e]ven if HRSW's alleged unpaid employer contributions were plan assets, Amodeo and Frantz's purported business decisions regarding how to deploy general corporate funds does not give rise to fiduciary liability," as "the decision by a company's owners to use their limited funds to pay other business expenses rather than to make contributions to benefit funds is a business decision, not a fiduciary one."  Defs.' Summ. J. Resp. Br. at 12-15 (internal quotation marks omitted).[9]

Based on the parties' briefs and relevant case law, the Court concludes that plaintiffs' motion as to Count V should be granted and defendants' motion should be denied.  "The Sixth

---

[9] Defendants raise substantially similar arguments in their motion for summary judgment.  *See* Defs.' Summ. J. Br. at 20-24.

Circuit has yet to consider exactly when unpaid benefit contributions become plan assets under ERISA." *Plumbers Loc. 98 Defined Benefit Pension Fund v. M&P Mater Plumbers of Mich., Inc.*, 608 F. Supp. 2d 873, 876 (E.D. Mich. 2009).  However, numerous judges in this district have held that pension and benefit fund contributions are plan assets as soon as they are due and owing.  *See id.* at 877 (compiling cases).  Under this view, which this Court shares, the unpaid HRSW fringe benefit contributions qualify as plan assets.[10]  Judges in this district have further held that when corporate officers are the "sole operator[s]" of a defendant corporation and "the company elected to pay a number of creditors rather than devoting these company assets to the shortfall in benefit contributions," the corporate officers can be held personally liable as ERISA fiduciaries.  *Grindall & White, Inc.*, 2013 WL 5450273, at *5.  In this case, the parties do not dispute that Amodeo and Frantz each owns 50% of both HRI and HRSW, that HRSW did not make fringe benefit contributions, and that HRI and HRSW did make payments to other creditors.[11]  Consequently, the Court concludes that there is no genuine issue of material fact and plaintiffs are entitled to judgment

---

[10] Moreover, as defendants note in their motion for summary judgment, both of the CBAs that plaintiffs produced during the course of discovery include express language stating that "contributions become Plan assets at the time they are due and owing to the Fund."  *See* Defs.' Summ. J. Br. at 22.

[11] Defendants rely heavily on the Sixth Circuit opinion in *Sheet Metal Loc. 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67, 69 (6th Cir. 2012), which held that the "refusal to pay the funds as required under the CBA does not rise to the level of exercising discretionary control or authority such that fiduciary status attaches."  However, the court in *AirTab* clarified that "[t]his is not a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries," rather, the alleged fiduciaries had simply failed or refused to pay funds to the beneficiaries.  The court of appeals characterized the former situation as "an exercise of control over a disposition of a plan's assets," whereas the latter constituted a breach of contract claim, which is only properly brought against corporate (rather than individual) defendants.  *Id.*  In the instant case, the undisputed evidence indicates that defendants paid other entities instead of paying fringe benefit contributions to the Funds.

as a matter of law.  The Court shall grant plaintiffs' motion for summary judgment and deny

defendants' motion for summary judgment as to Count V.

### F. State and common law conversion against Amodeo and Frantz (Count VI)

The Michigan Court of Appeals has stated that

> [c]onversion is defined as any distinct act of domain wrongfully
> exerted over another's personal property in denial of or inconsistent
> with the rights therein.  To support an action for conversion of
> money, the defendant must have obtained the money without the
> owner's consent to the creation of a debtor-creditor relationship and
> must have had an obligation to return the specific money entrusted to
> his care.

*Lawsuit Fin., LLC v. Curry*, 683 N.W.2d 233, 240 (Mich. Ct. App. Feb. 5, 2004) (internal quotation

marks and citation omitted).

In their complaint, plaintiffs allege that

> Steve Amodeo and Randy Frantz did not have authority, legal or
> otherwise, from the Funds or Union to deduct monies from [HRI's,
> HRP's, and HRSW's] employees' payments without turning these
> monies over to the Funds and Union, or to use such monies for any
> purpose other than to pay the employees' fringe benefits and remit
> dues to the Union as required under the CBA.
>
> By virtue of . . . Steve Amodeo and Randy Frantz intentional conduct
> [sic], the Funds have not received fringe benefits contributions and
> the Union has not received all required dues payments, even though
> these monies have been deducted from the employees' paychecks.

Compl. ¶¶ 63-64.

In their motion for summary judgment, defendants argue that "the record contains

no evidence that any specific money was deducted from employee paychecks and set aside for union

dues." Defs.' Summ. J. Br. at 25.  Plaintiffs do not directly address Count VI in their response to

defendants' motion, nor do they discuss it in their own motion for summary judgment.  At most,

18

plaintiffs appear to argue that if the Court finds that defendants violated the MBCFA by failing to make the fringe benefit contributions in the full amount required by the CBA, then defendants should also be held liable for conversion. *See* Pls.' Summ. J. Resp. Br. at 21-22. However, plaintiffs offer no evidence supporting their allegation that Amodeo and Frantz intentionally deducted money from employee paychecks. For this reason, the Court concludes that there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law. The Court shall therefore grant defendants' motion for summary judgment as to Count VI.

## II. Plaintiffs' Motion to Strike Defendants' Declarations

Finally, in their motion to strike defendants' declarations, plaintiffs ask the Court to strike certain paragraphs within the declarations of Steven Amodeo (¶¶ 13-22, 30-32, 40), Randy Frantz (¶ 2), and Stephen Ayris[12] (¶¶ 12, 23), which were attached as exhibits in support of defendants' motion for summary judgment. *See* Pls.' Strike Br. at 1.

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Among the relevant rules of evidence that a Court must consider when faced with a motion to strike is the rule against hearsay. Hearsay is an out-of-court statement that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is generally considered to be inadmissible as evidence. However, "[i]f an out-of-court statement is offered purely to show the statement's effect on the hearer, then this usage is not hearsay." *United*

---

[12] Stephen Ayris is the current Chief Financial Officer and Vice President of Finance at HRSW, and "periodically provide[s] accounting-related services for [HRI] and [HRP]." Defs.' Ex. 2 at 1-2. Ayris was not employed by HRSW when the CBA was executed. *See id.* at 3

*States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir. 2015).

Plaintiffs contend that certain paragraphs within Amodeo's and Ayris's declarations should be stricken for failure to abide by the personal knowledge and admissibility requirements. *See* Pls.' Strike Br. at 2. The challenged paragraphs within Amodeo's declaration refer to his alleged discussion with former Union business agent Peter Accica regarding the formation of HRI and the CBA between HRI and the Union, as well as subsequent conversations between Amodeo and Union representatives. *See id*. at 2-5. The challenged paragraph within Ayris's declaration discusses his understanding of the CBA based on statements made to him subsequent to the formation of the agreement. *See id*. at 5. Plaintiffs also argue that certain statements made by all three declarants should be stricken as impermissible legal conclusions. *See id*. at 5-6 (citing Amodeo Decl. ¶¶ 30, 40; Ayris Decl. ¶ 23; Frantz Decl. ¶ 2).

In response, defendants contend that the Court should not strike the challenged paragraphs because the declarants had personal knowledge of the facts to which they testified, the statements were not offered for the truth of the matter asserted, and the purported conclusions of law are statements of fact. *See* Defs.' Strike Resp. Br. at 6-11. As to plaintiffs' hearsay arguments in particular, defendants contend that because "the intent and knowledge of the parties is crucial to evaluating Plaintiffs' alter-ego and veil-piercing claims[,] . . . in support of their Motion for Summary Judgment, Defendants submitted declarations . . . going to that issue." *Id.* at 2.

The Court accepts defendants' characterization of the challenged statements for all but paragraph 12 of Ayris's declaration, which states:

> Although it predated my involvement at the companies, I understand that the union now known as Bricklayers & Allied Craftworkers Local No. 2 (the "Union") suggested that HRI execute a collective bargaining agreement with the Union to provide HRSW a means to

20

> take on union-mandated projects while not becoming party to a collective bargaining agreement itself. In other words, HRI is a party to a collective bargaining agreement with the Union; HRSW is not. HRI acts as HRSW's subcontractor on union-mandated projects.

*See* Ex. 2 ¶ 12. Ayris admits that he was not employed by the Hard Rock entities when the CBA was formed, *see id.* at ¶ 11, and defendants concede that "Ayris's understanding is based on statements made by others." Defs.' Strike Resp. Br. at 10. Defendants, however, argue that Ayris's statement does not constitute impermissible hearsay for two reasons: (1) "the fact that other parties affiliated with HRSW and/or HRI made statements regarding the Union's encouragement of the parties' relationship tends to show that HRSW and HRI did not understand themselves to be defrauding the Union" and (2) "the fact that Ayris—an officer of HRSW—heard those same statements tends to show that Ayris, and by extension, the companies, had no improper intent when continuing to operate in parallel." *Id.*

Because Ayris was not employed by the Hard Rock entities when the CBA was formed and is not a party to this suit, his intent or state of mind vis-a-vis the CBA is not relevant to this case. Ayris's statement is only relevant if offered for the truth of the matter asserted, which would constitute inadmissible hearsay. The Court therefore concludes that paragraph 12 of Ayris's declaration (Defs.' Ex. 2) should be stricken. Plaintiffs' motion is denied as to the other challenged statements contained in the declarations of Amodeo, Frantz, and Ayris.

## III. Conclusion

Accordingly,

IT IS ORDERED that plaintiffs' motion for summary judgment [docket entry 26] is granted in part and denied in part as follows: Plaintiffs' motion is granted as to Count I, Count II

(as to defendant HRSW), Count IV, and Count V.  Plaintiffs' motion is denied as to Count II (as to defendant HRP), Count III, and Count VI.

IT IS FURTHER ORDERED that defendants' motion for summary judgment [docket entry 27] is granted in part and denied in part as follows:  Defendants' motion is granted as to Count II (as to defendant HRP), Count III, and Count VI.  Defendants' motion is denied as to Count I, Count II (as to defendant HRSW), Count IV, and Count V.

IT IS FURTHER ORDERED that plaintiffs' motion to strike defendants' declarations [docket entry 30] is granted in part and denied in part as follows:  Paragraph 12 of Ayris's declaration (Defs.' Ex. 2) is stricken.  Plaintiffs' motion is denied as to the other challenged statements contained in the declarations of Amodeo, Frantz, and Ayris.

IT IS FURTHER ORDERED that plaintiffs submit a proposed judgment, with defendants' approval as to form, that incorporates the Court's rulings on the parties' motions for summary judgment and includes the amounts owed.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  July 22, 2021                    SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan